United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANNY L. MCCOY,

          Plaintiff,

     v.

UNITED STATES OF AMERICA,

         Defendant.

_____/

No. C-12-3821 TEH (PR)

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS AND FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION TO SET ASIDE
OBJECTION AND DENYING
PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT

Doc. nos. 37, 42, and 46

Plaintiff Danny L. McCoy, a federal prisoner presently incarcerated at the Federal Correctional Institution (FCI) in Lompoc, California, filed a pro se torts complaint under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the United States of America. Plaintiff alleges that he suffered personal injury as a result of negligence and medical malpractice that occurred when he was incarcerated at the FCI in Dublin, California. See Doc. #6 (Order of Service). The case was referred to a Magistrate Judge for settlement proceedings. On April 25, 2013, a settlement conference was held, but the case did not settle. See Doc. #34. On July 5, 2013, Defendant filed a motion to dismiss the negligence claim based on lack of subject matter jurisdiction and for summary judgment. Doc. # 37. Plaintiff filed an opposition and a cross-motion for summary judgment. Defendant filed a reply and Plaintiff filed a "response" to the reply, which the Court considers to be a sur-reply. Defendant filed an objection to Plaintiff's sur-reply and Plaintiff filed a motion opposing the objection, which the Court construes as a motion to overrule the objection. Doc. ##45, 46.

As set forth below, the Court grants Defendant's motion for dismissal and summary judgment, grants Plaintiff's motion to overrule Defendant's objection[1] and denies Plaintiff's cross-motion for summary judgment.

I

Unless noted, the following facts are undisputed. Plaintiff's claims for negligence and medical malpractice are based on an accident which occurred on January 27, 2011, when a pull-up/dip machine fell on Plaintiff in the recreation yard at FCI-Dublin.  As a result of this, Plaintiff experienced pain in his lower back, left shoulder and right wrist.

Defendants submit Plaintiff's medical records which show that, before January 27, 2011, Plaintiff had complained to medical staff that he experienced severe pain in his left shoulder and lower back, most likely due to Plaintiff's slip and fall in September 2009.  See Ringwood Dec., Ex. 9, Part 1, Plaintiff's Medical Records; Tseng Dec., Ex. 11, Plaintiff's Deposition at 102-05.

On January 27, 2011, while Plaintiff was exercising, he attempted to stretch on the pull-up/dip machine, which fell toward him.  Comp. at ¶ 7.  The pull-up/dip machine is a piece of exercise equipment that allows inmates to do pull-ups from a horizontal bar at the top of the machine, dips on the lower portion of the machine and crunches.  Declaration of Vince Reed, FCI-Dublin Safety Manager, (Reed Dec.), ¶ 5.  The pull-up/dip machine is estimated to be ninety

---

[1]In the interest of justice, the Court considers Plaintiff's sur-reply.  Therefore, Plaintiff's motion to overrule Defendant's objection to the sur-reply is granted.

2

to ninety-six inches tall and weigh between 200 to 250 pounds. Declaration of Michael Hill, former FCI Dublin Recreation Supervisor, (Hill Dec.), ¶ 5.  This machine was installed approximately ten to twelve years ago.  Hill Dec., ¶ 3.  It operates standing alone and does not need to be secured to the ground to be fully functional.  Hill Dec., ¶ 4.  When it was installed, the Chief of Mechanical Services (CMS) secured it to the ground with a metal bolt on one side to prevent inmates from using it to escape by moving it toward the fence and scaling the fence with it.  Hill Dec., ¶ 4.  The CMS secured the machine by creating a hole in the concrete floor of the yard, pouring cement into the hole and then fastening a piece of welded rebar into the cement.  Id., ¶ 3.

Plaintiff had done pull-ups and dips on the machine before the date of the accident.  Tseng Dec., Ex. 11, Plaintiff's Deposition at 36-37.  Before the accident, Plaintiff never looked to see if the machine was secured to the ground and did not know if or how it was secured.  Id. at 41.  Plaintiff knew that the machine was for pull-ups, dips and crunches and that he had never stretched on that machine or any similar machine.  Id. at 37-39.  On January 27, 2011, Plaintiff tried to stretch against the side of the machine by placing both hands facing up with his fingers wrapped around a horizontal bar on one side of the machine.  Id. at 18, 63. Plaintiff started out standing straight with his feet shoulder width apart, his elbows bent and his chest near the bar, and then stretched by leaning back and straightening his arms.  Id. at 23-24. Plaintiff wanted to stretch by pulling himself back and forth from

3

the machine by straightening and bending his arms.  Id. at 24.
Plaintiff testified at his deposition that, after he straightened
his arms, he hit the ground and the machine fell over toward him.
Id. at 24.   Another inmate, Percy Pearce, who was sitting next to
the machine, caught the top of the machine and helped pull it back
up.  Plaintiff, who was lying on the ground, pushed up on the
machine.  Id. at 24-25, 29.  Plaintiff testified that the machine
never collided with his body and that he and Pearce stopped the
machine from falling on him.  Id. at 30.  After he and Pearce got
the machine upright Plaintiff stood up, grabbed his left shoulder
and asked Officer Taylor to take him to the medical unit.  Id. at
53-54.  Officer Taylor called the medical unit, but medical staff
were busy.  Id. at 57.  Plaintiff thought that medical staff would
see him as soon as they were not busy, but he did not tell Officer
Taylor that he needed to see a medical professional right away.  Id.
at 59-60.  Plaintiff told Officer Taylor, "There's still time."  Id.
Plaintiff thought the medical unit would summon him in and he did
not need to do anything further.  Id. at 60-61.  However, he was not
seen by any medical staff on the day of the accident.  Id. at 61.

        Plaintiff knew that an inmate could go to the medical
department right away if there was an emergency.  Id. at 72-73.
Plaintiff did not go to the medical department until January 31,
2011, four days after the accident.  Id. at 82-83.  On January 31,
2011, Plaintiff was seen by Mid Level Practitioner Raul Cespedes.
Ringwood Dec., Ex. 9 at US00046-47, Cespedes Medical Note.  Cespedes
indicated that Plaintiff stated that "he fell off from a pull-up bar

4

in Jail rec 3 weeks ago hurting his low back and wrist."  Id. at

US00046.  Cespedes performed a musculoskeletal examination of

Plaintiff's wrist/hand/fingers and spine-lumbar.  Id.  In the

spine/lumbar area, Cespedes noted tenderness, decreased range of

active motion and decreased range of passive motion.  Id.  In the

wrist area, Cespedes noted tenderness and decreased range of active

and passive motion.  Id.  He prescribed ibuprofen and instructed

Plaintiff to follow-up at sick call, as needed.  Id. at US00047.

On February 14, 2011, Plaintiff had a follow-up medical

appointment with Mid Level Practitioner Valentina Bautista.  Id. at

US00050.  Bautista noted that Plaintiff complained of pain and there

was a "knot" on his left shoulder joint.  Id.  Plaintiff testified

that the knot had existed since 2009.  Tseng Dec., Ex. 11 at 108-09.

Bautista's examination of Plaintiff's left shoulder revealed a "bony

prominence at the A-C joint.[2]  This is most likely due to an old

injury.  No erythema, no swelling; no dislocation.  Full range of

motion."  Ringwood Dec., Ex. 9 at US00051.  Bautista noted that

Plaintiff had a history of chronic low back pain.  Id. at US00050.

Plaintiff's next medical visit was with Cespedes on

February 28, 2011.  Id. at US00052.  Plaintiff reported that he had

been experiencing left shoulder pain for seventeen months, that

there was a knot and a bone sticking out of his left shoulder, and

---

[2]
    The AC joint is an abbreviation for the acromioclavicular
joint, located at the top of the shoulder, which allows a person to
raise the arm above the head.  Acromioclavicular joint,
http://en.wikipedia.org/wiki/Acromioclavicular_joint (last visited
Jan. 14, 2014).

5

requested an MRI of his left shoulder.  Id.  Plaintiff testified
that the seventeen months referred to the fact that he had been
complaining about his left shoulder and back since they were first
injured in September 2009.  Tseng Dec., Ex. 11 at 109-110.
Cespedes' examination revealed that Plaintiff's left shoulder had
full range of motion and no tenderness.  Ringwood Dec., Ex. 9 at
US00052-53.  Cespedes referred Plaintiff to see an orthopedic
surgeon for "chronic left shoulder pain."  Id.

          Plaintiff was transferred to FCI Victorville on June 22,
2011.  Tseng Dec., Ex. 11 at 96, 112.  On July 14, 2011, x-rays were
taken of Plaintiff's left shoulder, right wrist and lower back.  Id.
at 111, 113.  The left shoulder x-ray showed negative findings
except for mild hypertrophic changes of the left AC joint.  Ringwood
Dec., Ex. 9 at US00062.  The x-ray of the lumbar spine showed
negative findings except for mild to moderate degenerative disc
disease (DDD).  Id. at US000063; Declaration of Dr. Gordon C. Lundy
(Lundy Dec.) at ¶ 26.  The x-ray of Plaintiff's wrist revealed
negative findings, except for mild degenerative joint disease.
Ringwood Dec., Ex. 9 at US00064.

          On July 15, 2011, Plaintiff saw Dr. Louis Redix, Jr., a
contract orthopedic surgeon.  Id. at US00065-68.  Dr. Redix's
examination revealed that Plaintiff's old shoulder injury "has
resulted in fragmentation of the acromioclavicular joint with
associated arthropathy.  The low back has no physical verification
of any present pathology.  The patient is in need of a distal
clavicle resection."  Id. at US00068.  Dr. Redix performed the

6

surgery on October 11, 2011.  Id. at US00082.  Plaintiff was seen

for post-operative visits and was prescribed pain medications and

range of motion exercises.  Id. at US00093-94, US00096.  Plaintiff

testified that, although his left shoulder felt better after the

surgery, he still experiences pain in that shoulder and intermittent

pain in his wrist.  Tseng Dec., Ex. 11 at 133, 135.

## II

### A

A motion to dismiss under Federal Rule of Civil Procedure

12(b)(1) tests the subject matter jurisdiction of the court.  Savage

v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003).

A Rule 12(b)(1) motion will be granted if the complaint, when

considered in its entirety, on its face fails to allege facts

sufficient to establish subject matter jurisdiction.  Id. at 1039

n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d

730, 733 (9th Cir. 1979).  On a motion for lack of jurisdiction

under Rule 12(b)(1), no presumptive truthfulness attaches to the

plaintiff's allegations, as it does on a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6) or a motion for summary

judgment under Rule 56.  Id.  Moreover, the existence of disputed

material facts does not preclude the court from evaluating the

merits of the jurisdictional claim and the plaintiff has the burden

of proof that jurisdiction exists.  Id.

### B

Defendant argues that the negligence claim is barred by

the discretionary function exception (DFE) to the FTCA.

7

The FTCA provides for the abrogation of the sovereign immunity of the United States with respect to tort claims against the federal government.  28 U.S.C. § 2674.  The FTCA provides that the United States shall be liable in tort suits "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  It is the exclusive waiver of sovereign immunity for suits against the United States sounding in tort.  28 U.S.C. § 1346(b).

However, the FTCA waiver of immunity is inapplicable to a claim based on the exercise of a discretionary function on the part of a federal agency or employee.  Childers v. United States, 40 F.3d 973, 974 (9th Cir. 1995) (citing 28 U.S.C. § 2680(a)).  This is true "whether or not the discretion is abused."  Miller v. United States, 163 F.3d 591, 593 (9th Cir. 1998).  Federal courts lack jurisdiction over any claim to which the DFE applies.  Alfrey v. United States, 276 F.3d 557, 561 (9th Cir. 2002).  Although the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, the government bears the burden of establishing that the DFE applies.  Sabow v. United States, 93 F.3d 1445, 1451 (9th Cir. 1996); Miller, 163 F.3d at 594.

Determining whether the DFE applies requires a two-step analysis.  The first step requires the determination of whether the challenged action involves an element of choice or judgment.  In re Glacier Bay, 71 F.3d 1447, 1450 (9th Cir. 1995).  When a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception will not apply.

8

Id.  To demonstrate that its conduct was discretionary, the government need only show that there was room for choice in making the challenged decision.  Santana-Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003).

The second step requires determining whether the decision at issue involves considerations of social, economic or political policy; if it does, the exception applies.  Glacier Bay, 71 F.3d at 1450.  "'When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'"  Conrad v. United States, 447 F.3d 760, 766 (9th Cir. 2006); Alfrey, 276 F.3d at 562 (quoting Weissich v. United States, 4 F.3d 810, 814 (9th Cir. 1993)) (holding that federal prison officials' allegedly negligent response to prisoner's reports of cellmate's death threats fell within discretionary-function exception).

The DFE does not apply when "'the claim is for negligence in performing a function that is analogous to functions performed by professionals in the private sphere every day.'" Alfrey, 276 F.3d at 561 (distinguishing between military physicians, whose duties are analogous to private physicians, and prison officials who are responding to security threats, whose duties are not analogous to the daily functions of private professionals).

C

Defendant does not dispute that Plaintiff has established subject matter jurisdiction under the FTCA.  Therefore, it is Defendant's burden to prove that the DFE applies.

1

Plaintiff's claim for negligence is based upon Defendant's failure to secure the pull-up/dip machine to the asphalt "as it should be."  See Doc. #2 at 11, Plaintiff's claim to Federal Bureau of Prisons (BOP).  Defendant argues that the undisputed facts show that the first prong of the discretionary function test is met because the decision to secure the machine to the ground by placing a metal bolt on one side was based on security concerns and security decisions are discretionary in nature.

Under 18 U.S.C. § 4042, the BOP has a general duty of care to safeguard prisoners.  Section 4042 provides, in relevant part, that the BOP has charge of the management and regulation of all federal penal and correctional institutions, including providing for the inmates' safekeeping, care, protection, instruction and discipline.  18 U.S.C. § 4042(a)(1)-(3).  However, under § 4042, the BOP retains sufficient discretion in the means it uses to fulfill that duty to trigger the DFE.  Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998); Montez v. United States, 359 F.3d 392, 396 (6th Cir. 2004); Santana-Rosa, 335 F.3d at 41-45.

Defendant also argues that there is no statute, regulation or policy that prescribes a course of action for BOP employees to follow regarding when or how to secure exercise equipment.

10

Defendant submits BOP Program Statement 5370.11, which addresses inmate recreation programs.  See Tseng Dec., Ex. 13.  Defendant points out that this program statement lists ten recreation program limitations, none of which includes instructions on whether or how BOP staff must secure or bolt down recreational equipment.  Tseng Dec., Ex. 13.  The most relevant is section 10(b), addressing weight training equipment, which states, "No funds, from any funding source, will be used for instruction . . . or training equipment for boxing, wrestling, judo, karate, or any other martial art."  Section 10(c) states, "No body building or weightlifting equipment of any sort may be purchased.  In-house minor repairs may be made to weightlifting benches, mats, and weightlifting belts to ensure safety and prevent injuries.  Tseng Dec., Ex. 13 at 83.[3]

Therefore, although the BOP Program Statement instructs BOP personnel not to expend funds for instruction of training equipment for body building and allows staff to make minor repairs to such equipment, it does not instruct whether or how BOP personnel must secure or bolt down any equipment.

Based on the foregoing, Defendant has carried its burden of showing that the first prong of the discretionary function test is met.  See Rodriguez v. United States, 415 Fed. Appx. 143, 144-47 (11th Cir. 2011) (discretionary function exception applied to inmate's negligence claim that he was injured while using hip and dip combo machine because BOP manual regarding recreational programs

---

[3]Page numbers on this document refer to the numbers that appear on the Court's electronic docketing system.

and activities did not prescribe how to provide for safe conditions for exercise equipment).

Plaintiff opposes based on the premise that his claim arises under the Constitution, 42 U.S.C. § 1983 and other statutes, but not under the FTCA.  However, Plaintiff's argument is puzzling because his complaint clearly states that he is alleging claims under the FTCA and not under any other statute.  For instance, paragraph one of the complaint states, "This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80."  Paragraph two of the complaint states, jurisdiction is conferred upon this court by 18 U.S.C. § 1346(b), which grants original jurisdiction to a district court when the United States is a defendant, as in a claim under the FTCA.  The complaint does not mention any other statutes or contain any citations to the United States Constitution. Plaintiff does not offer any argument against the DFE.

2

Defendant argues that the second prong of the DFE is met because the decision about securing the pull-up/dip bar to the ground was susceptible to policy analysis.

The second prong of the discretionary function test is satisfied if the discretionary decision is "based on 'social, economic and political policy.'"  <u>Miller</u>, 163 F.3d at 593 (citing <u>Berkowitz v. United States</u>, 486 U.S. 531, 536 (1988)).  "The decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis.  Where the government agent is exercising discretion, it must be presumed that

the agent's acts are grounded in policy when exercising that discretion." Id. at 593-94 (citing United States v. Gaubert, 499 U.S. 315, 324-25 (1991)).  For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime; the focus is not on the agent's subjective intent, but on the nature of the actions taken and on whether they are susceptible to policy analysis. Gaubert, 499 U.S. at 324-25.

The decision whether and how to secure the pull-up/dip equipment to the ground was susceptible to policy analysis.  See Santana-Rosa, 335 F.3d at 44 (decisions in managing large numbers of potentially dangerous inmates in penal institutions require exercise of discretion and decision-making within context of various difficult policy choices).  Possible policy decisions regarding the maintenance and security of body-building equipment include budgetary concerns, the character of the inmate population, the need for a specific level of security and the convenience of easy access to the equipment.  See id. (addressing maintenance of cleaning supplies and inmate work assignments).

The BOP staff decision to bolt down one side of the pull-up/dip machine to prevent inmates from moving it to scale the fence was susceptible to policy analysis based on security, safety, budgetary and other considerations.  Even if that decision was inappropriate it is still protected by the DFE.  See Chamberlin v. Isen, 779 F.2d 522, 525 (9th Cir. 1985) (DFE protects discretionary

conduct, whether or not the discretion involved was abused).

Again, Plaintiff does not oppose Defendant's argument regarding the second prong of the DFE; he presents the argument based on the false premise that his claim arises under the Constitution or statutes other than the FTCA.  Because Plaintiff's opposition is nonresponsive to Defendant's showing that the decision regarding the pull-up/dip machine comes under the DFE, he does not overcome Defendant's argument that the Court lacks jurisdiction over this claim.  Thus, litigation of Plaintiff's negligence claim is barred by the DFE.

Because the Court is divested of subject matter jurisdiction over this claim, it does not address Defendant's alternate arguments for summary judgment on this claim.

### III

Defendant argues that summary judgment should be granted in its favor on Plaintiff's medical malpractice claim.[4]

### A

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  Anderson v. Liberty Lobby,

---

[4]The DFE does not apply to medical malpractice claims.  Alfrey, 276 F.3d at 561.

14

_Inc._, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  _Id._

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" _Id._ at 324 (citing Fed. R. Civ. P. 56(c)).

In considering a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party.  _Leslie v. Grupo ICA_, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  _T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n_, 809 F.2d 626, 630 (9th Cir. 1987).  Mere allegations and speculations do not create a factual dispute for purposes of summary judgment.  _Nelson v. Pima Cmty. Coll._, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  Likewise, a mere scintilla of

15

evidence is insufficient to create a genuine issue of material fact in order to preclude summary judgment.  Id. at 1081.

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  Fed. R. Civ. P. 56(c); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).[5]

**B**

In his claim to the BOP, Plaintiff alleged that, when he first saw Cespedes on January 31, 2011, four days after the accident with the pull-up/dip equipment, Plaintiff told him that he had severe pain in his left shoulder, lower back and right wrist, but Cespedes just diagnosed it as a bad sprain and prescribed Ibuprofen. Doc. #2 at 13, Plaintiff's BOP claim.  At his deposition, Plaintiff explained that he asked Cespedes for an x-ray on January 31, 2011, but doesn't remember exactly what Cespedes said in response.  Tseng Dec., Ex. 11 at 91-92.  Plaintiff further explained that his claim is premised on the fact that Cespedes diagnosed his fracture as a sprain and, thus, Plaintiff had to "walk around all this time, and it was a fracture."  Id. at 97.  Plaintiff also claims that Cespedes wrote the incident report incorrectly because he did not indicate that Plaintiff had said that he was injured in the accident.  Id. at

---

[5]Although Plaintiff's complaint is not under penalty of perjury, Plaintiff's deposition testimony submitted by Defendant is admissible evidence.

98.  Plaintiff claims that Cespedes was trying to falsify the report.  Id.  Cespedes did not order an MRI until Plaintiff met with him again on February 28, 2011.  Id. at 111.

The elements of a claim for professional negligence, also referred to as medical malpractice, under California law, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  Budd v. Nixen, 6 Cal. 3d 195, 200 (1971), superseded in part by Cal. Civ. Proc. Code § 340.6; Hanson v. Grode, 76 Cal. App. 4th 601, 607 (1999).  Except for a narrow exception not applicable here, expert testimony is required to establish the standard of care and breach thereof.  Flowers v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal. 4th 992, 1001 (1994).  In order to prevail, a plaintiff must offer an expert's opinion that contains a reasoned explanation illuminating why the facts have convinced the expert that it is more probable than not that the negligent act was the cause of the plaintiff's injury.  Jennings v. Palomar Pomerado Health Systems, Inc., 114 Cal. App. 4th 1108, 1118 (2003); see also Johnson v. United States, 2012 WL 1094322, *12 (N.D. Cal. Mar. 30, 2012) (granting summary judgment to defendant on malpractice claim because plaintiff failed to provide expert testimony or evidence to establish that Defendant's alleged breach of applicable standard of care caused his injuries).

17

Although prison employees often enjoy immunity from state tort liability, California law expressly provides: "Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice."  Cal. Gov't. Code § 845.6.

C

Summary judgment must be granted to Defendant on two grounds.  First, Plaintiff cannot sustain his burden of proving duty, breach, causation and actual loss or damage by competent expert testimony because he has not submitted the testimony of an expert and the time for doing so ended on May 17, 2013.  See doc. #15, Stipulation Re: Discovery; doc. #20, Order Approving Stipulated Discovery Dates.  Second, Plaintiff's claim rests on an assumption that he fractured his left shoulder when the pull-up/dip machine fell toward him, but there is no evidence that his shoulder was fractured as a result of that incident.

Preoperation radiographs taken of Plaintiff's left shoulder on October 11, 2011, showed degenerative changes in the AC joint, but found "no evidence of fracture, dislocation or other abnormality of the left shoulder."  Ringwood Dec., Ex. 9 at US00079.  Dr. Redix's post-operative report indicates the same pre- and post-operative diagnosis: "Left shoulder arthropathy secondary to malunion of an intra-articular fracture of the acromioclavicular joint."  Id. at US00081.  Dr. Redix further stated, as an indication for surgery, "The patient sustained a fracture separation of the

18

acromioclavicular joint some years ago and has noted continued pain in the shoulder.  X-ray showed the patient to have a malunion of the acromioclavicular joint, and this provided the patient with juxtapositional pain of the shoulder with all movements of the shoulder."  Id.

Thus, the evidence in Plaintiff's medical records does not establish that he suffered a fractured shoulder as a result of the January 27, 2011 incident and Plaintiff does not submit expert evidence to counter the evidence in his records.  Furthermore, Plaintiff has not established with expert testimony that he required an x-ray to be ordered on January 31, 2011, as Plaintiff claims, and not on February 28, 2011, when Cespedes ordered the x-ray.  The testimony of an expert to show that the standard of care was breached by the one-month delay in ordering the x-ray is important because Plaintiff's medical records showed that on February 14, 2011, Plaintiff had full range of motion of his left shoulder, id. at US00051, and Plaintiff does not recall asking for an x-ray or MRI during his February 14, 2011 visit with Bautista.  Tseng Dec., Ex. 11 at 109.

Dr. Gordon C. Lundy, M.D., Defendant's orthopedic expert, reviewed Plaintiff's medical records and radiographs.  Lundy Dec. at ¶ 3.  Based on these documents, Dr. Lundy diagnosed Plaintiff as follows:

> 1. Chronic lower back pain, degenerative disc disease lumbosacral spine, prior to January 2011.
>
> 2. Chronic left acromioclavicular joint arthritis/pain, antedating January 2011.

19

                    3. Mild right wrist degenerative disease.
                    Possible mild right sprain occurring in January
                    2011.

Lundy Dec. at ¶ 73.

          Dr. Lundy provided the following opinions:

          It is highly medically unlikely that Mr. McCoy
          sustained a left shoulder fracture or other
          substantial injury in the reported incident of
          January 27, 2011.  There are ample records, both
          regarding the lower back and left shoulder
          regions, to demonstrate degenerative chronic
          problems in both areas, without any
          documentation to support his contention of any
          substantial musculoskeletal injury having been
          sustained involving the left shoulder, right
          wrist or lower back areas.  Mr. McCoy, by his
          own account, complained of "excruciating" pain
          in the left shoulder and lower back prior to
          January 2011, and per his deposition testimony,
          his lower back condition was unchanged following
          the described mishap of January 27, 2011 from
          its previous state.

          The operation undertaken by Dr. Redix in October
          2011 (left distal claviculectomy) was not
          necessitated by the alleged accident of January
          27, 2011, to a high degree of medical certainty,
          but rather by pathological conditions well
          established and documented prior to 2011.  The
          medical care provided to Mr. McCoy at each step
          following the reported incident of January 27,
          2011 appears to have been appropriate and well
          within the standard of care.

Id. at ¶¶ 80, 81.

          `     Thus, the undisputed evidence shows that Plaintiff's left

shoulder and lower back pain were caused by pre-existing

degenerative conditions documented years before the January 2011

accident.  The evidence also shows that surgery in October 2011 was

not necessitated by the January 2011 accident, as Plaintiff claims,

but by the pathological conditions which existed before 2011.

Further, even if the accident caused an exacerbation of the pre-

                              20

existing condition, Plaintiff has not submitted evidence establishing that the fact that Cespedes ordered the x-ray on February 28, 2011 instead of on January 31, 2011 caused Plaintiff additional injury or was below the medical standard of care, given that Plaintiff had complained many times in the past of pain in his shoulder and back that had been treated with pain medication, as Cespedes prescribed on January 31, 2011.

With respect to his back, Plaintiff admitted at his deposition, "I don't think my back was caused by the pull-up bar. It was already hurting."  Tseng Dec., Ex. 11 at 79.  With respect to his right wrist, Plaintiff only "guessed" that it got injured due to the January 27, 2011 accident and admitted that he did not know the cause.  Id. at 135-36.  Plaintiff's guesses or conclusory assumptions are insufficient to raise a genuine issue of material fact to preclude summary judgment for Defendant.  That Plaintiff submits no expert testimony establishing duty, breach, causation and damages makes it impossible for him to raise a genuine issue of material fact regarding any of the elements necessary for him to support a malpractice claim.  See Celotex, 477 U.S. at 324 (burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.').

Accordingly, Defendant's motion for summary judgment on the medical malpractice claim is granted.

21

1

                                      IV

2          Because the parties have filed cross-motions for summary

3    judgment, the Court has considered all of the evidence submitted by

4    Defendants in support of their motion, as well as the admissible

5    evidence submitted by Plaintiff to evaluate whether summary judgment

6    should be granted to him.  Fair Housing Council of Riverside County,

7    Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

8          When considering Plaintiff's cross-motion, the Court must

9    regard as true Defendant's version of the evidence and draw all

10   reasonable inferences in favor of them.  Celotex, 477 U.S. at 324.

11   To show that he is entitled to judgment as a matter of law,

12   Plaintiff must establish there is an absence of a genuine issue of

13   material fact and that he has made a showing sufficient to establish

14   the existence of all the elements essential to his case.  Id. at

15   322-23.  Under Defendant's version of the facts and Plaintiff's

16   meager submission of evidence, Plaintiff has not made a showing

17   sufficient to establish that Defendant is liable for medical

18   malpractice based on Cespedes' diagnosis and treatment of Plaintiff

19   on January 31, 2011.

20         Accordingly, Plaintiff's motion for summary judgment is

21   DENIED.

22                                      V

23         For the foregoing reasons, the Court orders the following:

24         1. Defendant's motion for dismissal and summary judgment

25   is granted.  Doc. #37.

26

27

28                                     22

1          2. Plaintiff's cross motion for summary judgment is

2   denied.  Doc. #44.

3          3. Plaintiff's motion to overrule Defendant's objection to

4   his response is granted.  Doc. #46.

5          4. The Clerk shall enter judgment in favor of Defendant

6   and close the file.

7          5. This Order terminates docket ## 37, 44, and 46.

8      IT IS SO ORDERED.

9

10  DATED      _01/22/2014_                    _____

11                                            THELTON E. HENDERSON
                                              United States District Judge